STATE OF INDIANA ) IN THE TIPPECANOE SUPERIOR COURT 1
) SS:
TIPPECANOE COUNTY ) TO THE 2020 TERM

PAUL GROSSMAN,
Plaintiff,

v. ) 79D01-2004-PL-

MADISON NATIONAL LIFE INSURANCE COMPANY,
Defendant.

Jury Trial Demanded

**VERIFIED COMPLAINT**

Comes now Plaintiff Paul Grossman and for his Verified Complaint against Defendant Madison National Life Insurance Company ("Madison"), alleges and states that:

1. Plaintiff is a resident of Tippecanoe County, Indiana.

2. Defendant is a Wisconsin Corporation with it principal place of business 1241 John Q. Hammons Drive, Madison, Wisconsin, 53717.

3. Plaintiff was an employee of Tippecanoe County from May 21, 2014 to December 14, 2016.

4. As a County employee he was covered under a Group Long Term Disability Insurance policy ("Policy") issued by Defendant. A true and accurate copy of the policy is attached hereto as **Exhibit A.**

5. The Policy provided coverage for long term disability ("LTD"). Under the policy a "disabled" person is entitled to receive LTD disability payments.

6. On or about November 16, 2016, at a time when the insurance policy was still in full force and effect, and Plaintiff was covered under the policy, Plaintiff became unable to

perform the material duties of his job because of physical disease and injury meeting the definition of "Disabled" under Section VIII of the Policy.

7.      Defendant made long term disability payments to Plaintiff beginning in January 2017.

8.      Plaintiff submitted additional documentation supporting his continued physical impairment to assist Defendant in it periodical review of his eligibility for LTD.

9.      Plaintiff provided voluminous medical documentation detailing his physical limitations due to his medical diagnosis as well as statements from his treating physicians.  The consensus of these opinions was he is unable to work and would likely not be able to work for the foreseeable future.

10.     On or about January 25, 2019, Plaintiff received notice that Defendant was terminating his LTD payments and premium wavier ("Denial").  A true and accurate copy of the Denial is attached hereto as **Exhibit B**.

11.     The purported basis for denying payment of LTD is that Plaintiff is "capable of performing the material duties of your any occupation [sic]."

**COUNT I-Breach of Contract**

12.     Plaintiff incorporates the facts and allegations in recital paragraphs 1-11 as if fully restated herein.

13.     Defendant breached its contract of insurance with Plaintiff by:

a.  Failing to investigate and review medical documentation submitted by Plaintiff in support of his claim;

b.  Denying Plaintiff's legitimate claim for long term disability payments; and

c.  Denying Plaintiff benefits as outlined in the contract.

14. Plaintiff has been damaged by Defendant's breach.

15. Plaintiff has performed all conditions precedent to recover under the contract and has not excused Defendant's non-performance.

WHEREFORE, Plaintiff Paul Grossman requests judgment against Defendant in the amount due to him under the terms of the contract, prejudgment interest, costs, and all other just relief.

**COUNT II- Breach of Insurer's Duty of Good Faith**

16. Plaintiff incorporates the facts and allegations in recital paragraphs 1-15 as if fully restated herein.

17. Defendant has a legal duty to deal with Plaintiff in good faith.

18. Defendant's action of terminating LTD payments and denial of continued coverage constitute a breach of its duty of good faith.

19. Defendant:

a. Failed to adequately evaluate Plaintiff's medical condition prior to terminating his LTD payments;

b. Denied his claim for LTD without conducting a reasonable investigation based upon all available information;

c. Recklessly disregarded Plaintiff's medical records and opinions of Plaintiff's treating physicians in concluding he was able to gainfully employed.

20. Plaintiff is entitled to recover from Defendant the value of the long-term disability payments from the date of denial to the date of trial, plus his attorney fees and exemplary damages.

WHEREFORE, Plaintiff Paul Grossman requests judgment against Defendant Madison National Life Insurance Company for the value of the long-term disability payments, plus reasonable attorney fees and exemplary damages, plus the costs of this action, all without relief from valuation and appraisement laws, and for all other just and proper relief.

I affirm, under the penalties for perjury, that the foregoing representations are true.

Paul Grossman (Apr 28, 2020)

Paul Grossman

This instrument prepared by:
Kyle Dietrich
Attorney #33920-79
REILING TEDER & SCHRIER, LLC
Renaissance Place, Sixth Floor
250 Main Street, Suite 601
P. O. Box 280
Lafayette, IN 47902-0280
Telephone: (765) 423-5333
Facsimile: (765) 423-4564
E-mail: kd@rtslawfirm.com

# CERTIFICATE OF INSURANCE

# GROUP LONG TERM DISABILITY INSURANCE

TIPPECANOE COUNTY
LAFAYETTE, INDIANA
NON-SAFETY EMPLOYEES

Administered by:
NATIONAL INSURANCE SERVICES of Wisconsin, Inc

**MADISON NATIONAL LIFE INSURANCE COMPANY, INC.**

1241 John Q. Hammons Drive · Madison, WI 53717

# GROUP LONG TERM DISABILITY INSURANCE CERTIFICATE OF COVERAGE

The Group Policy has been issued to the Policyowner. No coverage under the Group Policy is in effect until approved in writing by Madison National Life Insurance Company, Inc.

The Employer must apply for group long term disability insurance coverage under the Group Policy and join the Policyowner by submitting a completed Joinder Agreement and agreeing to pay premiums. The Group Policy contains numerous optional and variable provisions. The options and variables we have approved for the Employer's coverage under the Group Policy are contained in the Joinder Agreement and the Certificate(s) of Coverage. Only those provisions of the Group Policy which appear in the Joinder Agreement and the Certificate(s) of Coverage will apply to the Employer's coverage under the Group Policy. All provisions on this and the following pages are part of the Certificate of Coverage.

The Group Policy is on file and available for review at the main office of the Policyholder. The Certificate summarizes and explains the parts of the Group Policy that apply to you. This certificate is not an insurance policy. In the event of any conflict between the Group Policy and the Certificate, the Group Policy will control.

This Certificate replaces any other Certificates previously provided to you under the Group Policy.

Unless defined differently within a particular provision, the terms "you" and "your" mean the Eligible Person. "We", "us" and "our" mean Madison National Life Insurance Company. Other defined terms appear with their initial letters capitalized. References to section headings appear in quotation marks.

**MADISON NATIONAL LIFE INSURANCE COMPANY, INC.**

By

Larry R. Graber
President

# TABLE OF CONTENTS

SCHEDULE OF BENEFITS ..... 3
DEFINITIONS ..... 5
I. INSURING CLAUSE ..... 9
II. ELIGIBILITY FOR INSURANCE ..... 9
III. BECOMING INSURED ..... 9
IV. WAIVER OF PREMIUM ..... 10
V. WHEN YOUR INSURANCE ENDS ..... 11
VI. RULES FOR TRANSFER OF EMPLOYEES FROM PRIOR PLAN ..... 13
VII. REINSTATEMENT OF COVERAGE ..... 13
VIII. DEFINITION OF DISABILITY ..... 14
IX. CUMULATIVE ELIMINATION PERIOD ..... 14
X. RECURRENT DISABILITY ..... 14
XI. WHEN LTD BENEFITS END ..... 15
XII. PREDISABILITY EARNINGS ..... 15
XIII. LTD BENEFIT CALCULATION ..... 16
XIV. DEDUCTIBLE INCOME ..... 16
XV. BENEFITS AFTER INSURANCE ENDS OR IS CHANGED ..... 19
XVI. EFFECT OF NEW DISABILITY ..... 19
XVII. EXCLUSIONS ..... 20
XVIII. LIMITATIONS ..... 20
XIX. RESPONSIBILITIES OF DISABLED INSURED PERSONS ..... 21
XX. CLAIMS ..... 22
XXI. RIGHT TO REIMBURSEMENT ..... 24
XXII. SUBROGATION ..... 24
XXIII. ALLOCATION OF AUTHORITY ..... 25
XXIV. TIME LIMITS ON LEGAL ACTIONS ..... 25
XXV. INCONTESTABILITY PROVISIONS ..... 25
XXVI. CLERICAL ERROR AND MISSTATEMENT ..... 26
XXVII. FRAUD ..... 26
XXVIII. TERMINATION OR AMENDMENT OF THE GROUP POLICY AND EMPLOYER COVERAGE ..... 26
XXIX. REHABILITATION BENEFIT ..... 27
XXX. SURVIVOR BENEFIT ..... 27

## SCHEDULE OF BENEFITS

| | |
|---|---|
| Employer(s): | Tippecanoe County |
| Plan Number: | 1274 |
| Original Plan Effective Date: | November 1, 2009 |
| Benefits Revised Date: | June 1, 2015 |
| Eligible Class: | Class 01: Non-Safety Employees |
| Employer Premium Contribution: | 100% |
| Elimination Period: | 90 Consecutive Calendar Days |
| Minimum Hourly Work Requirement: | 30 hours per week |
| Waiting Period: | 30 days |
| Evidence of Insurability: | Required for Late Enrollees, Increases and amounts exceeding the Guarantee Issue |
| Employee Eligibility Date: | Upon completion of the Waiting Period |
| Minimum Participation Requirement: | 100% |
| Leaves and Sabbaticals: | Coverage with premium payment while on FMLA leave; Coverage with premium payment for up to 12 months while on paid or unpaid Leave of Absence. |
| Definition of Disability: | Zero Day |
| Own Occupation Period: | 24 months following the Elimination Period |
| Any Occupation Period: | From the end of the Own Occupation Period to the end of the Maximum Benefit Period. |
| Cumulative Elimination Period: | 90 out of 180 consecutive calendar days |
| Recurrent Disability: | 6 months |
| Predisability Earnings: | Base Pay only |
| Maximum Monthly Covered Salary: | $11,250 |
| LTD Benefit Percentage: | 60% |
| Maximum Monthly Benefit: | $6,750 |
| Guarantee Issue: | $6,750 |
| Minimum Monthly Benefit: | Lesser of $100 or 10% of Gross LTD Benefit |

Maximum Benefit Period:

| Age at Disablement | Benefit Duration |
|---|---|
| 61 or younger | to age 65 |
| 62 | 3-1/2 years |
| 63 | 3 years |
| 64 | 2-1/2 years |
| 65 | 2 years |
| 66 | 1-3/4 years |
| 67 | 1-1/2 years |
| 68 | 1-1/4 years |
| 69 or older | 1 year |

Work Incentive Period: First 12 months of Disability with Work Earnings

Social Security Integration: Full Family

Freeze Type: General Freeze

Pre-existing Condition Exclusion: 3/12

Mental Disorder Limitation: Two years unless hospital confined

Substance Abuse Limitation: Two years unless hospital confined

Claim Payment Method: Monthly

Rehabilitation Benefit: Included

Survivor Benefit: Included

## DEFINITIONS

**Active Work** and **Actively at Work** are defined in Section II.

**Any Occupation** means any job for which you are qualified by education, training, or experience regardless of whether you are working in that or another occupation.

**Contributory** means that you pay all or a portion of the premium for insurance.

**CPI-W** means the Consumer Price Index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. If the CPI-W is discontinued or changed, we may use a comparable index. Where required, we will obtain prior state approval of the new index.

**Deductible Income** is defined in Section XIV.

**Disability** and **Disabled** are defined in Section VIII.

**Eligible Class** means an employment classification defined by the Employer and specified in the "Schedule of Benefits". You must be a member of an Eligible Class in order to be eligible for insurance under the Group Policy.

**Eligible Person** is defined in Section II.

**Elimination Period** means the period of time that you must be continuously Disabled before LTD Benefits become payable. No LTD Benefits are payable during the Elimination Period. Your Elimination Period is specified in the "Schedule of Benefits".

**Employee** is defined in Section II.

**Employer** means an employer (including approved affiliates and subsidiaries) participating in the National Insurance Services Insurance Trust and to which we have assigned a Plan Number and issued a Joinder Agreement.

**Evidence of Insurability** is defined in Section III.

**Group Policy** with respect to the Policyowner means the group LTD insurance policy issued by us to the Policyowner. Group Policy with respect to an Employer means only those provisions of the Group Policy, including the options and variables requested by the Employer, that we have approved for that Employer with respect to its eligible employees. The Employer's coverage under the Group Policy is described in the Joinder Agreement provided by us to the Employer and identified by the Plan Number.

**Gross LTD Benefit** is defined in Section XIII.

**Guarantee Issue** is the amount of coverage provided, up to the Maximum Monthly Benefit, which is not subject to Evidence of Insurability.

**Hospital** means a legally operated hospital providing full-time medical care and treatment under the direction of a full-time staff of licensed physicians. Rest homes, nursing homes, convalescent homes, homes for the aged and facilities primarily affording custodial, educational, or rehabilitative care are not Hospitals.

**Indexed Predisability Earnings** means your Predisability Earnings adjusted annually by the rate of increase in the CPI-W. During the first year of Disability, Indexed Predisability Earnings are the same as the Predisability Earnings. Thereafter, your Indexed Predisability Earnings are determined on each anniversary of your Disability using the above method. The maximum adjustment in any year is 10%. Your Indexed Predisability Earnings may increase or remain the same, but will never decrease, even if the CPI-W decreases.

**Injury** means a bodily injury that is the direct result of an accident, that is not related to any other cause, and which in and of itself results in your Disability within 90 days.

**Insured Person** means an Eligible Person whose coverage has become effective under the Group Policy.

**Joinder Agreement** means the document entered into between the Policyowner, the Employer and us describing the coverage requested by the Employer with respect to its Employees, which has been approved by us and assigned a Plan Number.

**Late Enrollee** means an Employee who applies for coverage under the Group Policy more than 31 days after becoming an Eligible Person.

**LTD** means long term disability.

**LTD Benefit** means the net benefit payment due to you after deductions are applied to your Gross LTD Benefit as provided for under the Group Policy. Your LTD Benefit is calculated under Section XIII.

**Material Duties** is defined in Section II.

**Maximum Benefit Period** means the longest period for which LTD Benefits are payable for any one period of continuous Disability, whether from one or more causes. It begins at the end of the Elimination Period. No LTD Benefits are payable after the end of the Maximum Benefit Period, even if you are still Disabled. Your Maximum Benefit Period is specified in the "Schedule of Benefits".

**Mental Disorder** means any mental, emotional, behavioral, psychological, personality, cognitive, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome listed in the latest edition of American Psychiatric Association Diagnostic and Statistical Manual or the International Classification of Disease.

**Noncontributory** means the Employer pays the entire premium for insurance.

**Own Occupation** means the regular job you held just before your Disability began.

**Physical Disease** means a physical disease entity or process that produces structural or functional changes in the body as diagnosed by a Physician. Physical Disease includes Pregnancy.

**Physician** means a licensed medical professional under the laws of a state of the United States of America, acting within the scope of such license, who is permitted by law to prescribe medications and practice independent of supervision.

For the purpose of this Group Policy, Physician will not include you or your Spouse, or the brother, sister, parent or child of either an Insured Person or an Insured Person's Spouse.

**Plan Effective Date** means the date on which the Group Policy (with respect to the Employer) becomes effective.

**Plan Number** means the number used by us to reference an Employer and the terms of coverage specified under that Employer's Joinder Agreement.

**Policyowner** means National Insurance Services Insurance Trust..

**Predisability Earnings** is defined in Section XII.

**Pre-existing Condition** is defined in Section XVII.

**Pregnancy** means your pregnancy, childbirth, or related medical conditions, including complications of pregnancy.

**Prior Plan** means an Employer's group long term disability insurance plan in effect on the day immediately preceding the Plan Effective Date under this Group Policy.

**Proof of Loss** is defined in Section XX.

Regular Care of a Physician means:
1. that you personally visit a Physician as frequently as is medically required according to standard medical practice, but in no event less than annually, to effectively manage and treat your disabling condition(s);
2. that your Physician is rendering appropriate treatment and care for the disabling condition(s) which conform(s) with standard medical practice and is the most appropriate for the disabling condition(s), according to standard medical practice; and
3. that you are complying with all aspects of the treatment plan prescribed by the Physician.

**Retirement Date** means the earlier of:
1. the date you retire as defined by your Employer;
2. the date you become eligible to receive retirement benefits under any pension plan to which the Employer contributes, or
3. the date you become eligible to receive retirement benefits under any state or federal retirement plan or under social security law.

**Spouse** means a person to whom you are legally married and from whom you are not legally separated.

**Substance Abuse** means a condition listed in the latest edition of American Psychiatric Association Diagnostic and Statistical Manual or the International Classification of Disease within a classification category or code including but not limited to 291, 292, 303, 304 or 305.

**Waiting Period** is defined in Section II and the "Schedule of Benefits".

**Work Earnings** means your gross monthly earnings from work performed while Disabled.

Work Earnings include earnings from your Employer, any other employer, or self-employment and any sick pay, vacation pay, annual or personal leave pay or other salary continuation earned or accrued while working.

If you are paid in a lump sum or on a basis other than monthly, we will prorate your Work Earnings over the period of time to which they apply. If no period of time is stated, we will use a reasonable one.

In determining your Work Earnings, we:
1. will use the financial accounting method you use for income tax purposes, if you use that method on a consistent basis;
2. will not be limited to the taxable income you report to the Internal Revenue Service;
3. may ignore expenses under section 179 of the IRC as a deduction from your gross earnings;
4. may ignore depreciation as a deduction from your gross earnings;
5. may adjust the financial information you give us in order to clearly reflect your Work Earnings.

If we determine that your earnings vary substantially from month to month, we may determine Work Earnings by averaging your earnings over the most recent three-month period. During the Own Occupation Period, you will no longer be Disabled when your average Work Earnings over the last three months equal or exceed 80% of your Indexed Predisability Earnings, or when you are capable of earning 80% or more of your Indexed Predisability Earnings. During the Any Occupation Period, you will no longer be Disabled when your average Work Earnings over the last three months equal or exceed 80% of your Indexed Predisability Earnings, or when you are capable of earning 80% or more of your Indexed Predisability Earnings.

GLDI-C500-(12/06)-IN

## I. INSURING CLAUSE

A. If you become Disabled while insured under the Group Policy, we will pay LTD Benefits according to the terms of your Employer's coverage under the Group Policy, after we receive satisfactory Proof of Loss.

GLDI-C600-(12/06)

## II. ELIGIBILITY FOR INSURANCE

A. To be eligible for insurance under the Group Policy, you must be an Eligible Person. An **Eligible Person** is an Employee who has met the following requirements:

1. You must be an Employee. **Employee** means an individual who works for the Employer as a member of an Eligible Class who is reported on the Employer's records for Social Security and tax withholding purposes.

2. You must be a citizen or legal resident of the United States or Canada;

3. You must be Actively at Work and capable of sustained Active Work.

   a) **Active Work** and **Actively at Work** mean performing all the Material Duties of your Own Occupation at your Employer's usual place of business, and satisfying the Minimum Hourly Work Requirement. Actively at Work will include regularly scheduled days off, holidays, or vacation days, so long as you are capable of Active Work on those days.

   b) **Minimum Hourly Work Requirement** means the work hours over a given time period that are required of you by your Employer in order to be eligible for coverage. Your Minimum Hourly Work Requirement is specified in the Schedule of Benefits.

   c) **Material Duties** means the duties generally required by employers in the national economy of those engaged in a particular occupation that cannot be reasonably modified or omitted. In no event will working an average of more than 40 hours per week be considered a Material Duty.

4. You cannot be a part-time, temporary or seasonal employee, full-time member of the armed forces of any country, leased employee or independent contractor.

5. You must satisfy your Waiting Period. **Waiting Period** means the period of time that you must be Actively at Work as an Employee before your coverage may become effective. Your Waiting Period is specified in the "Schedule of Benefits".

GLDI-C700-(12/06)

## III. BECOMING INSURED

A. To become an Insured Person under the Group Policy, you must be an Eligible Person and meet the following requirements as each may apply:

1. If Evidence of Insurability is required, you must provide such Evidence of Insurability and be approved for coverage by us. The Schedule of Benefits specifies when Evidence of Insurability is required.

2. Evidence of Insurability.
   a) Providing **Evidence of Insurability** means that an applicant must:
      (1) complete and sign our Evidence of Insurability application and return the original application to us no later than 60 days from the date of signing; and
      (2) authorize us to obtain information about the applicant's health; and

(3) undergo a physical examination, if required by us, which may include diagnostic testing; and

(4) provide any additional information about the applicant's insurability that we may reasonably require.

b) If you, your Spouse or your dependents are required to provide Evidence of Insurability, you will be responsible for all costs associated with providing Evidence of Insurability.

c) In each case where Evidence of Insurability is required, we base our decision whether to approve coverage on the information provided during the underwriting process. If we learn that the information relied on to approve coverage was incorrect, or that relevant information was omitted, we may retroactively rescind coverage and deny claims.

3. If the insurance you wish to obtain is Contributory insurance, you must apply in writing and remit the required premiums.

B. Effective Date of Your Insurance

1. Initial Enrollment

a) Noncontributory insurance not subject to Evidence of Insurability, or which is subject to Evidence of Insurability and has been approved by us, becomes effective on the date you become an Eligible Person. If, however, you initially waive participation in such coverage and then later wish to participate, you will be treated as a Late Enrollee, subject to Evidence of Insurability.

b) Contributory insurance subject to Evidence of Insurability becomes effective on the first day of the month immediately following the month in which your Evidence of Insurability is approved by us, except that if such approval occurs on the first day of a month, such coverage becomes effective on that day.

c) Contributory insurance not subject to Evidence of Insurability. Provided that you apply prior to, or within 31 days of becoming an Eligible Person, Contributory insurance not subject to Evidence of Insurability becomes effective on the date you become an Eligible Person. If you do not apply for such coverage prior to, or within 31 days of becoming an Eligible Person and subsequently wish to obtain coverage, you will be a Late Enrollee, subject to Evidence of Insurability.

2. Increases in Existing Coverage and Late Enrollee Applications

a) Where Evidence of Insurability is required, increases of existing coverage and Late Enrollee applications become effective on the first day of the month immediately following the month in which your Evidence of Insurability is approved by us, except that if such approval occurs on the first day of a month, such coverage becomes effective on that day.

b) Where Evidence of Insurability is not required, an increase of existing coverage becomes effective on the date that you become eligible for such coverage.

3. If you are incapable of sustained Active Work due to a Disability on the day before the scheduled effective date of your insurance, such insurance will not become effective until the day after you are capable of sustained Active Work and complete one day of Active Work as an Eligible Person.

GLDI-C800-(12/06)                                                                                      Rev. 05/01/10

## IV.   WAIVER OF PREMIUM

A. Premium payments are required during the Elimination Period. However, payment of premium is waived while LTD Benefits are payable. Upon your return to Active Work, premium payments will again be payable.

GLDI-C900-(12/06)

## V. WHEN YOUR INSURANCE ENDS

**This provision applies to you if you are not Disabled.**

A. Except as otherwise provided for under this section, your coverage will cease on the earliest of the following dates:
   1. the date your Employer's coverage under the Group Policy terminates;
   2. the date you cease to be an Eligible Person;
   3. the date that your premium payment is not paid when required;
   4. the date you become eligible for coverage under another group long-term disability policy;
   5. if you are a contract employee not returning to work as an Eligible Person the next contract year, the earlier of the following:
      a) the date you become employed with another employer;
      b) your Retirement Date;
      c) expiration of the current contract year;
   6. your Retirement Date.

B. Approved FMLA Leave of Absence - Contributory or Noncontributory Coverage
   1. If you are on a FMLA leave, coverage will continue until the later of the leave period required by the Federal Family and Medical Leave Act of 1993, as amended, or the leave period required by applicable state law, provided that:
      a) we receive written notice in advance of a leave approved by the Employer which includes the beginning and ending dates of the leave and the amount of your covered salary; and
      b) FMLA leaves of absence and the right to continue coverage during FMLA leaves are available to all Employees in the same Eligible Class under the Group Policy; and
      c) the Employer remits the required premium for coverage.

   2. The Elimination Period can be satisfied and benefits may be payable during a FMLA leave subject to all other contract provisions. The benefit will be based on the lesser of your earnings in effect on your last full day of Active Work prior to the leave, or the salary for which premium was paid.

C. Paid Leave of Absence. If you are on a paid leave of absence, coverage will continue subject to the following:
   1. Noncontributory coverage
      a) Coverage will continue provided that:
         (1) we receive written notice in advance of a leave approved by the Employer which includes the beginning and ending dates of the leave and the amount of your covered salary; and
         (2) paid leaves of absence and the right to continue coverage during paid leaves are available to all Employees in the same Eligible Class under the Group Policy; and
         (3) the Employer remits the required premium for coverage.

      b) The Elimination Period can be satisfied during a paid leave of absence, but benefits will not begin until the later of the end of the Elimination Period or the date the paid leave was scheduled to end. In the event a benefit is payable, it will be based on the lesser of your earnings in effect on your last full day of Active Work prior to the paid leave of absence, or the salary for which premium was paid.

      c) Unless you return to active, eligible status on or before the date the leave is scheduled to end, coverage extended during a paid leave will terminate on the earlier of the date the paid leave is scheduled to end or 12 months from the date the paid leave began.

   2. Contributory Coverage
      a) Coverage will continue provided that:
         (1) we receive written notice in advance of a paid leave of absence approved by the Employer which includes the beginning and ending dates of the leave and the amount of your covered salary; and

         (2) paid leaves of absence and the right to continue coverage during paid leaves of absence are available to all Employees in the same Eligible Class under the Group Policy; and

         (3) you continue to pay the required premium to the Employer without interruption and the Employer continues to remit premium to us on your behalf.

    b) The Elimination Period can be satisfied during a paid leave of absence, but benefits will not begin until the later of the end of the Elimination Period or the date the paid leave was scheduled to end. In the event a benefit is payable, it will be based on the lesser of your earnings in effect on your last full day of Active Work prior to the paid leave of absence, or the salary for which premium was paid.

    c) Unless you return to active, eligible status on or before the date the paid leave of absence is scheduled to end, coverage extended during a paid leave of absence will terminate on the earlier of the date the paid leave of absence is scheduled to end or 12 months from the date the paid leave of absence began, or the date you fail to pay the premium as required.

    d) If you choose not to continue coverage or your coverage terminates during a paid leave of absence and you subsequently wish to obtain coverage, you will be treated as a Late Enrollee and be required to provide Evidence of Insurability.

D. Unpaid Leave of Absence - If you are on an unpaid leave of absence, coverage will continue subject to the following:

  1. Noncontributory Coverage

    a) Coverage will continue provided that:

         (1) we receive written notice in advance of an unpaid leave of absence approved by the Employer which includes the beginning and ending dates of the unpaid leave of absence and the amount of your covered salary; and

         (2) unpaid leaves of absence and the right to continue coverage during unpaid leaves of absence are available to all Employees in the same Eligible Class under the Group Policy; and

         (3) the Employer remits the required premium for coverage.

    b) No benefits are payable during an unpaid leave of absence. If you become Disabled during such leave, the Elimination Period will begin on the date the unpaid leave of absence was scheduled to end. The benefit will be based on the lesser of your earnings in effect on your last full day of Active Work prior to the unpaid leave of absence, or the salary for which premium was paid.

    c) Unless you return to active, eligible status on or before the date the unpaid leave of absence is scheduled to end, coverage extended during an unpaid leave of absence will terminate on the earlier of the date the unpaid leave of absence is scheduled to end or 12 months from the date the unpaid leave of absence began.

  2. Contributory Coverage

    a) Coverage will continue provided that:

         (1) we receive written notice in advance of an unpaid leave of absence approved by the Employer which includes the beginning and ending dates of the leave and the amount of your covered salary; and

         (2) unpaid leaves of absence and the right to continue coverage during unpaid leave of absence are available to all Employees in the same Eligible Class under the Group Policy; and

         (3) you continue to pay the required premium to the Employer without interruption and the Employer continues to remit premium to us on your behalf.

    b) No benefits are payable during an unpaid leave of absence. If you become Disabled during such leave, the Elimination Period will begin on the date the unpaid leave of absence was scheduled to end. The

benefit will be based on the lesser of your earnings in effect on your last full day of Active Work prior to the unpaid leave of absence, or the salary for which premium was paid.

c)  Unless you return to active, eligible status on or before the date the unpaid leave of absence is scheduled to end, coverage extended during an unpaid leave of absence will terminate on the earlier of the date the unpaid leave of absence is scheduled to end or 12 months from the date the unpaid leave of absence began, or the date you fail to pay the premium as required.

d)  If you choose not to continue coverage or your coverage terminates during an unpaid leave of absence and you subsequently wish to obtain coverage, you will be treated as a Late Enrollee and be required to provide Evidence of Insurability.

GLDI-C1000-(12/06)                                                                                      Rev. 05/01/10

## VI.    RULES FOR TRANSFER OF EMPLOYEES FROM PRIOR PLAN

A.  If you were eligible for insurance and insured under the Prior Plan on the day before the Plan Effective Date, you can become insured on the Plan Effective Date without meeting the Active Work requirement under Section II.A.3.

B.  The LTD Benefit will be the lesser of the monthly benefit that would have been payable under the terms of the Prior Plan if it had remained in force, or the LTD Benefit as determined under the other provisions of this Group Policy. However, no benefits will be payable to you under the Group Policy if any benefits are payable to you under the Prior Plan.

C.  If you were eligible for insurance under the Prior Plan for more than 31 days but were not insured under the Prior Plan, you must provide Evidence of Insurability and be approved by us to become insured.

D.  Continuation of Coverage and Pre-existing Conditions. In calculating the coverage period for determining whether the Pre-existing Condition Exclusion applies, we will include any period of continuous coverage under the Prior Plan immediately preceding the date you became insured under the Group Policy.

GLDI-C1100-(12/06)

## VII.    REINSTATEMENT OF COVERAGE

A.  If your coverage ends, you may become covered again as an Insured Person, subject to the following:

1.  If you cease to be an Eligible Person and coverage ends, and then you return to Active Work with the Employer again within 12 months, the Waiting Period will be waived on the first day of your return to Active Work and you will not have to provide Evidence of Insurability. If you become covered again under this paragraph, the Pre-existing Condition Exclusion will be applied as if there had been no gap in coverage.

2.  If your coverage ends because you fail to make the required contribution while on an approved Family Medical Leave Act (FMLA) leave of absence, and then you return to Active Work and enroll for coverage within 31 days of the earlier of:
    a)  the end of the period of leave you and your Employer agreed upon; or
    b)  the end of the 12 week period following the date your leave began,
    then the Waiting Period will be waived and you will not have to provide Evidence of Insurability. If you become covered again under this paragraph and a Pre-existing Condition Exclusion applies, such Exclusion will be applied as if there had been no gap in coverage.

3.  In all other cases, if your coverage ends because you fail to make the required contribution, you must provide Evidence of Insurability to become covered again.

4.  In no event will insurance coverage be retroactive.

GLDI-C1200-(12/06)                                                                                      Rev. 6/10/15

## VIII.   DEFINITION OF DISABILITY

A. **Disability or Disabled** means that during the Elimination Period and your Own Occupation Period you are, as a result of Physical Disease, Injury, Mental Disorder, Substance Abuse or Pregnancy, unable to perform one or more of the Material Duties of your Own Occupation, and, due to such inability, your Work Earnings are less than 80% of your Indexed Predisability Earnings, and you are incapable of earning 80% or more of your Indexed Predisability Earnings.

Your Work Earnings may be Deductible Income.  See the "LTD Benefit Calculation" and "Deductible Income" sections.

B. After your Own Occupation Period ends, **Disability and Disabled** mean you are, as a result of Physical Disease, Injury, Mental Disorder, Substance Abuse or Pregnancy, unable to perform one or more of the Material Duties of Any Occupation, and, due to such inability, your Work Earnings are less than 80% of your Indexed Predisability Earnings, and you are incapable of earning 80% or more of your Indexed Predisability Earnings.

Your Work Earnings may be Deductible Income.  See the "LTD Benefit Calculation" and "Deductible Income" sections.

C. Loss of License or Certification. For an Insured Person whose occupation requires a license, a restriction or loss of license does not, in itself, constitute a Disability.

D. Preventive Measures. Your inability to perform any of your Material Duties because of preventive treatments or other preventive measures does not, by itself, constitute a Disability.

E. Your Own Occupation Period and Any Occupation Period are specified in the Schedule of Benefits.

GLDI-C1300-(12/06)

## IX.   CUMULATIVE ELIMINATION PERIOD

A. If, during the Elimination Period, you return to Active Work at your Own Occupation or Any Occupation, and then become Disabled again from the same or a related cause(s), then only days of Disability due to the same or a related Sickness or injury will count towards the satisfaction of the Elimination Period, provided that 90 days of Disability due to the same or a related Sickness or Injury are completed with a 180 day period.

## X.   RECURRENT DISABILITY

A. If you return to work for your Employer from a Disability for which benefits were payable under the Group Policy and then become Disabled again due to the same or related cause, we will treat the separate periods of Disability as one period of continuous Disability, provided you are continuously insured under the Group Policy during the period of recovery and the period of recovery does not exceed 6 months. Benefits resume on the date your Disability recurs.

B. If you return to work for your Employer from a Disability covered under the Group Policy and then become Disabled again due to an unrelated cause, we will treat the subsequent Disability as a new claim, subject to all of the terms of the Group Policy.

C. If you return to work for your Employer from a Disability covered under the Group Policy and then become Disabled again more than 6 months after you return to work, the subsequent Disability will be treated as a new claim, subject to all of the terms of the Group Policy.

D. For the purposes of this provision, if your occupation with the Employer does not allow you to be Actively at Work for the entire calendar year due to a seasonal or regularly scheduled employment break, we will consider you to have returned to work if you would have been able to return to work had work been regularly scheduled..

GLDI-C1500-(12/06)

## XI.   WHEN LTD BENEFITS END

A. Your LTD Benefits end automatically on the earliest of the following:
   1. The date you are no longer Disabled;
   2. The date your Maximum Benefit Period ends;
   3. The date you die;
   4. The date you become eligible for coverage under any other group LTD plan under which you become insured through employment;
   5. The date you fail to provide satisfactory objective medical evidence of continued Disability;
   6. The date you fail to comply with our request to be examined by a Physician, other medical practitioner and/or a vocational or rehabilitation expert of our choice;
   7. The date you refuse to accept an accommodated position, offered by your Employer, which you are able to perform, whether it is in your Own Occupation or Any Occupation;
   8. The date at which you have resided outside of the United States or Canada for 6 months;
   9. The date you are confined in a penal or correctional institution or under house arrest;
   10. The date you fail to comply with any requirements set forth in Section XIX, Responsibilities of Disabled Insureds.
   11. The date you are able to work and earn 80% of your Indexed Predisability Earnings but choose not to.

GLDI-C1600-(12/06)

## XII.   PREDISABILITY EARNINGS

A. Predisability Earnings means your earnings in effect on your last full day of Active Work prior to becoming Disabled. Unless otherwise specifically provided for under the Group Policy, any subsequent change in your earnings will not affect your Predisability Earnings.

B. Methods of Calculating Predisability Earnings

   1. Salaried Employees.  Your monthly Predisability Earnings are equal to your annual Predisability Earnings divided by twelve.

   2. Hourly Employees.  If you are paid hourly, your monthly Predisability Earnings will be based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month, not to exceed 173.33 hours.  If you do not have regular work hours, your monthly Predisability Earnings are based on the average number of hours you worked per month during the preceding 12 calendar months (or during your period of employment if less than 12 months), not to exceed 173.33 hours.

C. Predisability Earnings includes the following:
   1. your base rate of pay.

D. Predisability Earnings does not include the following:
   1. commissions;
   2. bonuses;

3.   overtime pay;
4.   pay for extracurricular activities;
5.   longevity pay;
6.   extra duty pay;
7.   supplemental pay;
8.   shift differential;
9.   your Employer's contributions to your health insurance premium;
10.   your Employer's contributions to a Tax Sheltered Annuity (TSA);
11.   contributions you make through a salary reduction agreement with your Employer to:
   a)  an Internal Revenue Code (IRC) Section 401(k), 403(b), 408(k), or 457 deferred compensation arrangements; or
   b)  an executive nonqualified deferred compensation arrangement;
12.   amounts contributed by you to your fringe benefits according to a salary reduction agreement under an IRC Section 125 plan;
13.   your Employer's contributions on your behalf to any deferred compensation arrangement, pension plan, or other fringe benefits;
14.   any other extra compensation.

E.  Notwithstanding Section A above, in no event will your monthly Predisability Earnings exceed either the monthly salary for which premiums have been paid or the Maximum Monthly Covered Salary.

GLDI-C1700-(12/06)

## XIII.   LTD BENEFIT CALCULATION

A.  Your monthly **Gross LTD Benefit** is equal to the lesser of your monthly Predisability Earnings times the LTD Benefit Percentage, the Gross LTD Benefit Flat Amount,or the Maximum Monthly Benefit.

B.  Your monthly **LTD Benefit** is equal to your monthly Gross LTD Benefit minus monthly Deductible Income (subject to the Minimum Monthly Benefit).

## XIV.   DEDUCTIBLE INCOME

A.  Your Gross LTD Benefit will always be reduced by Deductible Income which is available to you or which you are eligible to receive as a result of your Disability, whether or not you apply for and receive such payments or benefits. The Deductible Income that we will subtract from your Gross LTD Benefit is listed below.

B.  To receive the full measure of income under the Group Policy, you must apply for all Deductible Income for which you may be eligible as soon as you are entitled to such benefits. If you do not apply for and actively pursue in good faith all Deductible Income for which you may be eligible, we may make our own conclusion as to whether you are entitled to those benefits. If we reasonably and in good faith determine that you are entitled to Deductible Income, we will estimate the amount of those benefits and reduce the Gross LTD Benefit by that estimated amount as of the date on which we deem you were eligible to receive Deductible Income. Integration of the estimated amount of Deductible Income that we have determined is available to you will continue until you provide us with proof that you have filed the appropriate application(s) and continue to actively pursue Deductible Income.

Each month we will determine your LTD Benefit using the Deductible Income for the same monthly period, even if you receive the Deductible Income in another month.

C.  If you are paid Deductible Income in a lump sum, we will use the period of time to which the Deductible Income applies. If no period of time is stated, we will make a reasonable estimate.

D. We will not estimate the amount of Deductible Income nor reduce your Gross LTD Benefit by any amounts for which applications or administrative appeals for Deductible Income are pending, provided that you:

1. apply for in good faith and pursue to our satisfaction all Deductible Income for which we determine you might be eligible;

2. designate, at our request, an agent endorsed by us as your representative in the application process and cooperate with that representative at all stages of the application process;

3. keep us informed on a timely basis of the status of all applications for Deductible Income;

4. sign a Reimbursement Agreement; and

5. pursue administrative appeals of Deductible Income denials.

E. **Deductible Income** includes the following:

1. Sick pay (including donated amounts and paid time off);

2. Annual or personal leave pay, severance pay, or other salary continuation, except vacation pay, payable to you by your Employer;

3. Work Earnings as follows:
   a) During the first 12 months of Disability with Work Earnings (the "Work Incentive Period"), if the total amount of your Gross LTD Benefit plus the amount you receive from Work Earnings exceeds 100% of your Predisability Earnings, the amount in excess of 100% of your Predisability Earnings will be included in Deductible Income;

   b) Upon expiration of the Work Incentive Period, 50% of your Work Earnings will be included in Deductible Income.

4. Any amount you receive or are eligible to receive because of your Disability under any of the following:
   a) a Workers' Compensation Law to the extent we, at our discretion, determine that these amounts are of the general character as payments provided under the Group Policy for Disability;
   b) the Jones Act;
   c) Maritime Doctrine of Maintenance, Wages or Cure;
   d) Longshoremen's and Harbor Worker's Act;
   e) any similar act or law;

5. The amount that you, your Spouse and children receive or are eligible to receive because of your disability or retirement benefits under:
   a) the United States Social Security Act;
   b) the Canada Pension Plan;
   c) the Quebec Pension Plan;
   d) the Railroad Retirement Act; or
   e) any similar Plan or Act;

   Benefits your Spouse or a child receive or are eligible to receive because of your Disability are Deductible Income regardless of the marital status, custody, or place of residence;

6. Any amount you receive or are eligible to receive because of your Disability under any state disability income benefit law or similar law;

7. Except as specifically excluded in "Exceptions to Deductible Income", any amount you receive or are eligible to receive because of your Disability under automobile insurance or any group insurance coverage;

8. Retirement plans
   a) Any disability or retirement benefits you receive or are eligible to receive because of your Disability under your Employer's retirement plan, including a public employee retirement system, a state teacher retirement system, or a plan arranged and maintained by a union or employee association for the benefit of its members;
   b) If any of these plans has two or more payment options, the option which comes closest to providing you a monthly income to age 65 with no survivor benefit will be used to determine Deductible Income;
   c) Your and your Employer's contributions will be considered as distributed simultaneously throughout your lifetime, regardless of how funds are distributed from the retirement plan;

9. Any amount you receive or are eligible to receive under any unemployment compensation law or similar act or law;

10. Any amount you receive or are eligible to receive from or on behalf of a third party because of your Disability, whether by judgment, settlement or other method.  If you notify us before filing suit or settling your claim against such third party, the amount used as Deductible Income will be reduced by a pro rata share of your costs of recovery, including reasonable attorney fees;

11. Any amount you receive by compromise, settlement, or other method as a result of a claim for any of the above, whether disputed or undisputed;

12. Any amount you receive under any "no fault" motor vehicle plan.

F. **Deductible Income** does not include the following:

1. Any cost of living increases in any Deductible Income other than Work Earnings, if the increase becomes effective while you are Disabled and while you are eligible for the Deductible Income.

2. Reimbursement for hospital, medical or surgical expense;

3. Reasonable attorneys' fees incurred in connection with a claim for Deductible Income;

4. Benefits from any individual disability insurance policy;

5. Early retirement benefits under the Federal Social Security Act which are not received;

6. Group credit or mortgage disability insurance benefits;

7. Accelerated benefits paid under a life insurance policy;

8. Under your Employer's retirement plan, any amount you could have received upon termination of employment without being disabled or retired;

9. Benefits from the following:
   a) Profit sharing plan;
   b) Thrift or savings plan;
   c) Deferred compensation plan;
   d) Plan under IRC Section 401(k), 408(k), or 457;

e) Individual Retirement Account (IRA);
f) Tax Sheltered Annuity (TSA) under IRC Section 403(b);
g) Stock ownership plan;
h) Keogh (HR-10) plan;
i) Retirement plan under a professional service corporation with respect to principals.

GLDI-C1900-(12/06)                                                                              Rev. 4/20/14

## XV.    BENEFITS AFTER INSURANCE ENDS OR IS CHANGED

A.  During each period of continuous Disability, we will pay LTD Benefits according to the terms of your Employer's coverage under the Group Policy in effect on the date you become Disabled.  Your right to receive LTD Benefits will not be affected by:
1.  any amendment to the Group Policy or your Employer's coverage under the Group Policy that is effective after you become Disabled.
2.  termination of the Group Policy or your Employer's coverage under the Group Policy after you become Disabled.

GLDI-C2000-(12/06)

## XVI.    EFFECT OF NEW DISABILITY

A.  If a period of Disability is extended by a new cause while LTD Benefits are payable, LTD Benefits will continue while you remain Disabled, subject to the following:

1.  LTD Benefits will not continue beyond the end of the original Maximum Benefit Period;
2.  The "Exclusions" and "Limitations" sections will apply to the new cause of Disability.

GLDI-C2100-(12/06)

## XVII. EXCLUSIONS

A. War. You are not covered for a Disability caused or contributed to by War or any act of War. War means a state or period of declared or undeclared war whether civil or international, any substantial armed conflict with organized forces of a military nature between nations, states or parties, or acts of terrorism.

B. Criminal Conduct. You are not covered for a Disability caused or contributed to by your committing or attempting to commit an assault, battery, or any other crime. You are not covered for a Disability caused as a result of your engaging in an illegal activity, or actively participating in a violent disorder or riot. Actively participating does not include being at the scene of a violent disorder or riot while performing your official duties.

C. Military Leave. You are not covered for a Disability that occurs during any military leave for active duty, including training duty, the National Guard and Coast Guard, or any active or reserve component of the military forces of any state or country.

D. Imprisonment. No LTD Benefits will be paid for any period of Disability when you are, for any reason, confined in a penal or correctional institution or under house arrest.

E. Intentionally Self-Inflicted Injury-Suicide. You are not covered for a Disability caused or contributed to by an intentionally self-inflicted injury or attempted suicide, while sane or insane.

F. Pre-existing Conditions.

  1. You are not covered for a Disability caused or contributed to by a Pre-existing Condition or medical or surgical treatment of a Pre-existing Condition unless you have been continuously insured under the Group Policy for at least 12 months and have been Actively at Work for at least one full day after the end of that 12 months.

  2. **Pre-existing Condition** means a mental or physical condition whether or not diagnosed or misdiagnosed for which you have consulted a Physician or other licensed medical professional, received medical treatment, services or advice, undergone diagnostic procedures, including self-administered procedures, or taken prescribed drugs or medications at any time during the 3 month period just before the effective date of your insurance under the Group Policy.

## XVIII. LIMITATIONS

A. Mental Disorders and Substance Abuse
  1. LTD Benefit payments based on a Mental Disorder or Substance Abuse are limited to 24 months for each period of continuous Disability. This is not a separate maximum for each such condition, but a combined maximum for Mental Disorders or Substance Abuse, either separate or combined.

  2. If your Disability is caused by Substance Abuse, you must be participating in an available rehabilitative program recommended by a Physician. An available rehabilitative program is a substance abuse program available to you through either: (i) another group plan of your employer (such as an Employee Assistance Program or Medical Plan); or (ii) services generally available to the public through local community services at no or minimal cost to you. Except as otherwise provided for below, LTD benefits will not be made beyond the earlier of the following:
    a) the date on which LTD Benefits have been paid for the maximum duration specified in subsections A1 and A3 or under the Maximum Benefit Period;
    b) the date you are no longer participating in the rehabilitative program;
    c) the date you refuse to participate in an available rehabilitative program; or

    d) the date you complete the rehabilitative program.

    3. Exception to 24 month limitation. If at the end of that 24 month period, you are confined in a Hospital, or other facility qualified to provide necessary care and treatment for Mental Disorders or Substance Abuse, for at least one day immediately following that 24 month period, LTD Benefits will continue during such confinement, not to exceed the Maximum Benefit Period.

B. Foreign Residency. Payment of LTD Benefits is limited to 6 months for each period of continuous Disability while you reside outside of the United States or Canada.

C. Payment Limit. In no event will the LTD Benefit plus Deductible Income plus Work Earnings exceed 100% of Predisability Earnings. In the event your LTD Benefit plus Deductible Income plus Work Earnings exceeds 100% of Predisability Earnings, the LTD Benefit will be reduced by the amount in excess of 100% of Predisability Earnings.

GLDI-C2300-(12/06)

## XIX. RESPONSIBILITIES OF DISABLED INSURED PERSONS

A. Your Obligations During A Period Of Disability

    1. You must make a good faith effort to recover from, or reduce the severity of, your Disability and the resulting loss of income, or you will forfeit benefits. The Group Policy requires you to take a variety of actions in this regard, including, but not limited to, the following:

        a) You must accept any position within a broad definition of Own Occupation that you can perform and which your Employer or another employer makes available during the Own Occupation Period regardless of whether the compensation for such work is less than your Predisability Earnings. The income earned will be treated as Work Earnings.

        b) You must arrange for and use the Regular Care of a Physician. In addition, you must pursue any reasonable medical procedure or treatment that would likely improve your condition or end your Disability, and that does not pose unreasonable risks.

        c) You must submit periodic evidence from your Physician that substantiates, to our satisfaction, that you remain Disabled. This required evidence includes, but is not limited to, objective medical and/or psychiatric evidence from a Physician that confirms your Disability. Subjective complaints alone will not be considered conclusive evidence of a Disability. The attending Physician must be able to provide objective medical evidence to support his/her opinion as to why you are not able to perform the Material Duties of your Own Occupation or Any Occupation. You must obtain and provide this information at your own expense.

        d) Where they exist, you must engage in appropriate medical and/or occupational rehabilitation programs that are reasonably expected to enable you to return to work. You must notify us when you participate in such a program.

        e) You must appeal denials of Deductible Income and actively pursue such appeals in good faith.

        f) You must promptly provide us with all information that we reasonably decide is necessary to verify and administer your claim for benefits.

    2. Return to Work Responsibility

a) During the Own Occupation Period, no LTD Benefits will be paid for any period of Disability when you are able to work in your Own Occupation and able to earn at least [80%/TBD] of your Indexed Predisability Earnings, but you elect not to work.

b) During the Any Occupation Period, no LTD Benefits will be paid for any period of Disability when you are able to work in Any Occupation and are able to earn at least [60%/TBD] of your Indexed Predisability Earnings, but elect not to work.

c) Any earnings you receive from work you perform, or that you could receive if you worked as much as you are able to considering your Disability, that are less than 100% of your Indexed Predisability Earnings will be treated as Work Earnings.

3. Duty to Furnish Information. To receive benefits under the Group Policy, you must authorize and direct medical care providers and sources of earnings or Deductible Income to provide us with all information and records that we reasonably determine to be relevant to the determination of benefits or eligibility for benefits. We do not pay fees charged for submitting this information to us. Any such costs will be your responsibility.

B. Our Right to Examine. We may require you to be examined by a Physician, other medical practitioner and/or vocational expert of our choice, in addition to your obligation to be under the Regular Care of a Physician as specified above. In such case, we will pay for the additional examination. You must cooperate fully with the Physician, medical practitioner or vocational expert and give full effort to such examinations. We can require an examination as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Company representative.

C. Insured Person's Failure to Comply
   1. We have the right to suspend benefits during any portion of a Disability in which you fail to comply with any of the requirements set forth in this Certificate.

   2. We have the further right to terminate irrevocably all further benefits under the Group Policy when benefits have been suspended for a period of [6/TBD] consecutive months due to your failure to comply with any of the requirements of the Group Policy.


## XX.   CLAIMS

A. Notice of Claim
   1. Written notice of claim should be given to us within 20 days of the date the Elimination Period ends, if that is possible. If that is not possible, you must notify us as soon as it is reasonably possible to do so.

   2. When we receive a written notice of claim, we will send you our claim forms for filing Proof of Loss. If you do not receive the forms within 15 days after written notice of claim is sent, you can send us written Proof of Loss without waiting for the forms.

B. Proof of Loss
   1. Proof of Loss means all the information necessary to determine that a loss occurred:
      a) for which the Group Policy provides benefits; and
      b) which is not subject to any exclusions; and
      c) which meets all other conditions for benefits.

   2. Written Proof of Loss must be furnished to us at our home office no later than 90 days after the end of the Elimination Period. If it is not possible to give proof within this time limit, it must be given as soon as reasonably possible, but not later than one year following the end of the 90 day period. These limits will not apply while an Insured Person lacks legal capacity.

3.  Any items we may reasonably require in support of a claim, such as completed claims statements and a signed authorization for us to obtain information including tax information must be submitted at your expense. If the required documentation is not provided within 60 days after we mail our request, your claim may be denied. No benefits will be paid until we receive Proof of Loss satisfactory to us.

C.  Investigation of Claim
    1.  We may investigate a claim at any time.
    2.  At our expense, we may have you examined at reasonable intervals by specialists of our choice. We may deny or suspend benefits if you fail to attend an examination or cooperate with the examiner.

D.  Payment of Claims
    1.  We will pay LTD Benefits within 30 days after we receive satisfactory Proof of Loss, but not before satisfaction of the Elimination Period.

    2.  Claim Payment Method. LTD Benefit payments that you qualify for will be paid to you as specified in the "Schedule of Benefits". Payments for partial weekly benefits will be pro-rated based on a 7 day week. Payments for partial monthly benefits will be pro-rated based on a 30 day month.

    3.  LTD Benefits payable at the time of your death will be paid to the person(s) receiving the "Survivor Benefit" if applicable. If no "Survivor Benefit" is paid, the unpaid LTD Benefits will be paid to your estate.

E.  Notice of Adverse Decision on Claim
    1.  We will notify you of an adverse benefit determination within a reasonable period of time, but not later than 45 days after we receive satisfactory Proof of Loss. This period may be extended by us for up to 30 days, provided that we determine that such an extension is necessary due to matters beyond our control, and provided that we notify you prior to the end of the initial 45 day period, of the circumstances requiring the extension of time and the date by which we expect to render a decision.

    2.  If, prior to the end of the first 30 day extension period, we determine that, due to matters beyond our control, a decision cannot be rendered within that extension period, the period for making the determination may be extended for up to an additional 30 days, provided that we notify you prior to the expiration of the first 30 day extension period, of the circumstances requiring the extension and the date as of which we expect to render a decision.

    3.  In the case of any extension, the notice of extension will specifically explain the standards on which entitlement to a benefit is based, the unresolved issues that prevent a decision on the claim and the additional information needed to resolve those issues. You will be given at least 45 days within which to provide the specified information.

    4.  If we deny any part of your claim, you will receive a written notice of denial containing the following:
        a)  the reasons for our decision;
        b)  reference to the provisions of the Group Policy on which our decision is based;
        c)  a description of any additional information needed to support your claim;
        d)  information concerning your right to a review of our decision.

F.  Review Procedure
    1.  If all or part of a claim is denied, you may request a review. A request for a review must be in writing and received by us within 120 days after you receive notice of the denial.

    2.  You may send us written comments or other items to support the claim and may review any non-privileged information that relates to the request for review.

3. We will review the claim promptly after we receive the request. We will send you a notice of our decision within 45 days after we receive the request, unless special circumstances require an extension. If we determine that an extension of time for processing is required, written notice of the extension will be furnished to you prior to the expiration of the initial 45 day period. In no event will such extension exceed a period of 60 days from the end of the initial period.

G. Assignment. The rights and benefits under the Group Policy are not assignable.

GLDI-C2500-(12/06)-IN

## XXI.   RIGHT TO REIMBURSEMENT

A. If we make benefit payments to you in excess of the amounts required by the provisions of this Group Policy or, if you receive retroactive benefits from any Deductible Income source for periods of time during which we paid benefits to you, you must reimburse us for any such excess, duplicate, or erroneous payments.

B. Before any LTD Benefits are paid to you, you must execute and deliver to us a Reimbursement Agreement, provided by us, setting forth specific terms of reimbursement.

C. Upon request, you must execute and deliver to us such documents as may be required, and do whatever else may be necessary, to secure our rights to recover any excess, duplicate, or erroneous payments.

D. You must reimburse us in a satisfactory and timely manner for any payments made to which you were not entitled under the terms of this Policy. Such reimbursement will be due and payable immediately upon our notification to you. At our option, subsequent payment of benefits or the refund of any premium owed to you by us may be reduced or applied by us directly toward such reimbursement obligation. If you delay in notifying us of your receipt of Deductible Income or in making reimbursement to us, we will have the right to charge interest at a reasonable rate on the delinquent amount owed to us.

E. Our acceptance of premium or other fees, or our providing or paying of benefits, does not constitute a waiver of our rights to enforce the provisions of this section in the future. The provisions of this section are in addition to, and not in lieu of, any other rights or remedies available to us at law or in equity.

## XXII.   SUBROGATION

A. If LTD Benefits are paid or payable to you under the Group Policy as the result of any act or omission of a third party, we will be subrogated to all rights of recovery you may have in respect to such act or omission. You must execute and deliver to us such instruments and papers as may be required and do whatever else is needed to secure such rights. You must avoid doing anything that would prejudice our rights of subrogation.

B. If you notify us before filing suit or settling your claim against such third party, the amount to which we are subrogated will be reduced by a pro rata share of your costs of recovery, including reasonable attorney fees. If suit or action is filed, we may record a notice of payments of LTD Benefits and such notice will constitute a lien on any judgment recovered.

C. If you or your legal representatives fail to bring suit or action promptly against such third party, we may institute such suit or action in our name or in your name. We are entitled to retain from any judgment recovered the amount of LTD Benefits paid or to be paid to you or on your behalf, together with our costs of recovery, including attorney fees. The remainder of such recovery, if any, will be paid to you or as the court may direct.

GLDI-C2700-(12/06)

## XXIII. ALLOCATION OF AUTHORITY

A. Except for those functions which the Group Policy specifically reserves to the Policyowner or Employer, we have full and exclusive authority to control and manage the Group Policy, to administer claims and to interpret the Group Policy and resolve all questions arising in the administration, interpretation and application of the Group Policy.

B. Our authority includes, but is not limited to the following:
1. the right to resolve all matters when a review has been requested;
2. the right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;
3. the right to determine the following:
   a) eligibility for insurance;
   b) entitlement to benefits;
   c) the amount of benefits payable;
   d) the sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.

C. Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

GLDI-C2800-(12/06)

## XXIV. TIME LIMITS ON LEGAL ACTIONS

A. No action at law or in equity may be brought until 60 days after we have received Proof of Loss. No such action may be brought more than three years after the earlier of the following:
1. the date we receive Proof of Loss;
2. the time within which Proof of Loss is required to be given.

## XXV. INCONTESTABILITY PROVISIONS

A. Incontestability of Insurance
1. Any statement made to obtain or to increase insurance is a representation and not a warranty.

2. No misrepresentation will be used as a basis for reducing or denying a claim or contesting the validity of insurance unless:
   a) the insurance would not have been approved if we had known the truth; and
   b) we have given you or any other person claiming benefits a copy of the signed written instrument which contains the misrepresentation.

3. After insurance has been in effect for two years during the lifetime of the Insured Person, we will not use a misrepresentation as a basis for reducing or denying a claim, unless it was a fraudulent misrepresentation.

B. Incontestability of the Group Policy or Employer Coverage under the Group Policy
1. Any statements made by the Policyowner to obtain the Group Policy or made by an Employer to obtain coverage under the Group Policy is a representation and not a warranty.

2. No misrepresentation by the Policyowner or your Employer will be used as a basis for denying a claim, or for denying the validity of the Group Policy or your Employer's coverage under the Group Policy unless:
   a) the Group Policy would not have been issued or your Employer's coverage under the Group Policy would not have been approved if we had known the truth; and

b)  we have given the Policyowner or Employer a copy of a written instrument signed by the Policyowner or Employer which contains the misrepresentation.

3.  The validity of the Group Policy or your Employer's coverage under the Group Policy will not be contested after it has been in force for two years, except for nonpayment of premiums or fraudulent misrepresentations.

GLDI-C3000-(12/06)

## XXVI.  CLERICAL ERROR AND MISSTATEMENT

A.  Clerical Error
1.  Clerical error by us, the Policyowner, your Employer, or their respective employees or representatives will not:
   a)  cause a person to become insured under the Group Policy or a provision of it.
   b)  invalidate insurance otherwise validly in force.
   c)  continue insurance otherwise validly terminated.
   d)  cause an Employer to obtain coverage under the Group Policy or a provision of it.
2.  In the event that a clerical error results in an incorrect rate, we reserve the right to adjust the rate accordingly.

B.  The payment of premium, by itself, will not obligate us to provide benefits to anyone who is not eligible for coverage under the Group Policy.

C.  Your Employer acts on its own behalf as your agent, and not as our agent.  Your Employer has no authority to alter, expand or extend our liability or to waive, modify or compromise any defense or right we may have under the Group Policy.

D.  Misstatement of Age or Gender
1.  If the age or gender, or both, of a person has been misstated, we will make an equitable adjustment of premiums, benefits or both.  The adjustment will be based on:
   a)  the amount of insurance based on the correct age and gender; and
   b)  the difference between the premiums paid and the premiums which would have been paid if the age and gender had been correctly stated.

GLDI-C3100-(12/06)

## XXVII. FRAUD

A.  It is unlawful to knowingly provide false, incomplete or misleading facts or information with the intent of defrauding us.  An application for insurance or claim containing any materially false or misleading information may lead to reduction, denial or termination of benefits or coverage under the Group Policy and recovery of any amounts we have paid.

GLDI-C3200-(12/06)

## XXVIII.    TERMINATION OR AMENDMENT OF THE GROUP POLICY AND EMPLOYER COVERAGE

A.  The Group Policy may be terminated, changed or amended in whole or in part by us or the Policyowner according to the terms of the Group Policy.  Any such change or amendment may apply to current or future Employers and Eligible Persons covered under the Group Policy or to any separate classes or categories thereof.  An Employer's coverage under the Group Policy may be terminated, changed or amended in whole or in part by us or the Employer according to the terms of the Group Policy.

B. We may change the Group Policy and any Employer's coverage under the Group Policy in whole or in part when any change or clarification in law or governmental regulation affects our obligations under the Group Policy, or with the Policyowner's or Employer's consent.

C. We may terminate an Employer's coverage on any premium due date by giving the Employer not less than 31 days advance notice. An Employer may terminate coverage under the Group Policy in whole, and may terminate insurance for any class or group of Eligible Persons, at any time by giving us advanced written notice at least 31 days prior to such termination. Insurance will terminate automatically for nonpayment of premium.

D. Benefits are limited to the terms of your Employer's coverage under the Group Policy, including any valid amendments. No change or amendment of your Employer's coverage will be valid unless it is approved in writing by one of our executive officers and delivered to your Employer. The Policyowner, your Employer and their respective employees or representatives have no right or authority to change or amend the Group Policy or your Employer's coverage under the Group Policy or to waive any terms or provisions thereof without our signed, written approval.

GLDI-C3300-(12/06)

## XXIX. REHABILITATION BENEFIT

A. While you are Disabled, you may qualify to participate in a Rehabilitation Plan. **Rehabilitation Plan** means a written plan, program or course of medical treatment or vocational training or education that is intended to prepare you to return to work full time.

B. To participate in a Rehabilitation Plan, you must apply in a letter to us. The terms, conditions and objectives of the plan must be accepted by you and approved by us in advance. We have the sole discretion to evaluate, approve and/or terminate your Rehabilitation Plan at any time.

C. While you are participating in an approved Rehabilitation Plan, your LTD Benefit will be reduced by 50% of any income earned by you for work done under the Rehabilitation Plan. If the sum of your Gross LTD Benefit and Work Earnings exceeds 100% of Predisability Earnings, the excess will be included in Deductible Income. At no time will LTD Benefits be paid beyond the Maximum Benefit Period or be less than the Minimum Monthly Benefit.

GLDI-C6300-(12/06)

## XXX.  SURVIVOR BENEFIT

A. If you die while LTD Benefits are payable, we will pay a Survivor Benefit as follows:
1. The Survivor Benefit will consist of a lump sum equal to 3 times the amount of your last LTD Benefit.

2. The Survivor Benefit will first be applied to reduce any overpayment of your claim.

3. The Survivor Benefit will be paid at our option to any one of the following:
   a) Your surviving Spouse;
   b) Your surviving unmarried children, including adopted children, under age 21;
   c) Your surviving Spouse's unmarried children, including adopted children, under age 21;
   d) Your estate.

GLDI-C6800-(12/06)

**Questions regarding your policy or coverage should be directed to:**

Madison National Life Insurance Company, Inc.
PO Box 5008
Madison, WI 53705

Toll Free Number: 1-800-356-9601

If you (a) need assistance of the governmental agency that regulates insurance: or (b) have a complaint you have been unable to resolve with your insurer, you may contact the Department of Insurance by mail, telephone, or email:

State Department of Insurance
Consumer Services Division
311 W. Washington St., Suite 300
Indianapolis, Indiana 46204-2787
Consumer Hotline: (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

**Questions regarding your policy or coverage should be directed to:**

Madison National Life Insurance Company, Inc.
PO Box 5008
Madison, WI  53705

Toll Free Number:  1-800-356-9601

If you (a) need assistance of the governmental agency that regulates insurance: or (b) have a complaint you have been unable to resolve with your insurer, you may contact the Department of Insurance by mail, telephone, or email:

State Department of Insurance
Consumer Services Division
311 W. Washington St., Suite 300
Indianapolis, Indiana 46204-2787
Consumer Hotline:  (800) 622-4461; (317) 232-2395

Complaints can be filed electronically at www.in.gov/idoi.

Indiana (Rev. 5/05)

USDC IN/ND case 4:20-cv-00040-TLS-JEM document 4 filed 04/29/20 page 35 of 45

79D01-2004-PL-000047
Filed: 4/29/2020 11:18 PM
Clerk
Tippecanoe County, Indiana
Tippecanoe Superior Court 1

**David Vogl**

**From:** David Vogl
**Sent:** Tuesday, February 11, 2020 10:46 AM
**To:** grossman0863@msn.com
**Subject:** Claim Documentation
**Attachments:** 300 - Corres-Claimant - Description WAIVER TERMINATION LETTER - NO LONGER TD ANY OCC - Claim GW87.pdf; 300 - Corres-Claimant - Description LTD TERM - NOT TD ANY OCC - Claim 37673 - PAUL GROSSMAN.pdf; 135 - Voc Rehab - Description TSA REPORT - Claim 37673 - PAUL GROSSMAN.pdf; 525 - FR - Description R3 CONTINUUM FILE REVIEW REPORT - Claim 37673 - PAUL GROSSMAN.pdf; 525 - FR - Description OCC MED FILE REVIEW (ECN) - Claim 37673 - PAUL GROSSMAN.pdf

Good Morning,

Attached here you will find copies of the documentation explaining the decision to terminate your claim for Waiver of Premium and Long Term Disability benefits.
In addition you will find copies of the medical and vocational review reports that were consulted in making those decisions.

Previously, an extension in the time line available for you to present an appeal request had been approved to March 30, 2020.
This email will also confirm our approval of an additional 30-day extension from that date, which is to April 29, 2020.
Therefore, if you intend to request an appeal review of these claim determinations, that request must be received on or before April 29, 20202.

If you have any questions, you may contact me via reply to this email, or as indicated below.

Respectfully,

David Vogl
Appeal Specialist
Madison National Life Insurance Company
PO Box 2865
Clinton, IA 52733-2865
@secure@
Phone#: 800-356-9601 x2420
Fax#: 608-830-2701

RE: Paul Grossman

LH Lisa Haselow <LIH@madisonlife.com>
Today, 8:39 AM
paul grossman <grossman0863@msn.com>

Reply all

Good morning Mr. Grossman:

Your claim remains closed at this time, as an appeal has not been filed. Per the notes in the file, an appeal specialist had an agreement with your attorney to extend the deadline for submission of an appeal to 60 after the date of the decision of the Administrative Law Judge (regarding your Social Security Disability). We received a copy of the Administrative Law Judge decision and it is dated January 30, 2020. Therefore, the deadline to submit an appeal is to March 30, 2020. If an appeal is filed within the time allotted, it will be handled by our Appeals team, not myself. I hope this information finds you well. Take care.

Sincerely,
Lisa

Lisa L. Haselow
Senior Claims Specialist V - Trainer
Madison National Life Insurance Company
A Member of The IHC Group
1(800)356-9601 Ext. 2416
lih@madisonlife.com

Please consider the environment before printing this email or its attachments.

@secure@

-----Original Message-----
From: paul grossman <grossman0863@msn.com>
Sent: Wednesday, February 5, 2020 2:40 PM
To: Lisa Haselow <LIH@madisonlife.com>
Subject: Paul Grossman

[CAUTION: This email originated from outside of the IHC Group. Do not click links or open attachments unless you recognize the sender and know the content is safe.]

Hi Lisa.
I guess my case is yours again. My SSDI was denied again and I need to discuss this with my attorney. I may request another extension of time. Thanks

Encrypted Message paul grossman Sign Out ?

# FW: Question

LH Lisa Haselow <LIH@madisonlife.com>
Yesterday, 9:23 AM
paul grossman <grossman0863@msn.com>; David Vogl <DJV@madisonlife.com>

Reply all |

Mr. Grossman:

Your email was sent to me, but the greeting is to "Dave". As such, I am including David on the response so he is aware of our correspondence.

As you know, our policy states you have 180 days to appeal a denial. Our decision to terminate your benefit was rendered on January 25, 2019. Therefore, the 180-day deadline to file an appeal was July 24, 2019. In May 2019, you requested an appeal deadline extension to September 24, 2019, which was granted. In September 2019, you requested another extension, pending the outcome of Social Security Disability appeal/hearing. We agreed to grant an extension to 60 days after the Administrative Law Judge (ALJ) decision. We received the ALJ decision, dated January 30, 2020 - therefore the deadline was extended to March 30, 2020. After a discussion between you and David on February 11, 2020, we agreed to add an additional 30 days to your last extension, now making the deadline April 29, 2020. This is a total of 280 days beyond the original 180-day deadline.

If you have specific questions regarding legal limitations, those questions should be posed directly to an attorney. Madison National Life Insurance Company, Inc. does not provide legal advice.

If you have additional questions regarding your appeal, please send them directly to David on our appeal team - DJV@madisonlife.com - to ensure they are addressed timely. Also, please be advised that all email responses will be sent via secure encryption, which will require you to sign in each time to view our response. You have reported difficulties with this process in the past. As such, if you do not wish to receive encrypted email responses, we recommend sending your inquiries via USPS Mail or another means, and we will respond in kind. Thank you.

Message Encryption by Microsoft Office 365

Madison National
Life Insurance Company
A Member of The IHC Group

www.madisonlife.com

January 25, 2019

Paul Grossman
2418 Farmington Place
Lafayette, IN 47905

RE: Group Term Life - Waiver of Premium
Claim # GW8785
Policy # 4184
Employer: Tippecanoe County Government

Dear Mr. Grossman:

We are writing to inform you that ongoing waiver of premium benefits under the above-mentioned policy are being denied because the most recent medical information received does not support that you meet the definition of total disability. The policy defines disability as follows:

> *"**Disability** or **Disabled** means that as a result of Physical Disease or Injury, you are unable to perform with reasonable continuity a majority of the material duties of any occupation for which you are qualified by education, training and experience, and you are under the Regular Care and Attendance of a Physician."*

The information used in making the claim decision includes, but is not limited to:

1. Employee's Statement completed by you on December 27, 2016;
2. Employer's Statement completed by Shirley Mennen on January 20, 2017;
3. Attending Physician's Statements completed by Jeffrey Crecelius, MD, and Darren Reed, DO ranging from December 22, 2016 to July 31, 2018;
4. Medical records from your treating providers ranging from April 2016 through October 2018;
5. Activities of Daily Living & Computer Skills questionnaires completed by you on May 2, 2017 and July 23, 2018;
6. An Independent Occupational Medicine File Review conducted by Mahdy Flores, DO on behalf of Exam Coordinators Network (ECN);
7. An Independent Psychiatric File Review conducted by Brandon Erdos, MD on behalf of R3 Continuum; and
8. A Transferable Skills Analysis completed by David Morgan, MD, CRC, LCPC on behalf of Paradigm.

Based on the information in your file, you ceased work entirely as of November 16, 2016. Your claim was approved based on the medical documentation on file at that time. After satisfying a 9-month Elimination Period, you became eligible for Waiver of Life Insurance Premium effective August 1, 2017.

*(...continued from previous page...)*

Throughout your claim, we have been obtaining updated medical records to ensure that we have up-to-date information regarding your condition and treatment. The latest update indicates that you continued to have complaints including chronic pain, insomnia, IBS/gastrointestinal issues, peripheral neuropathy, and anxiety. After reviewing medical records from all your providers, we were unable to clearly discern what restrictions resulted from your multiple conditions.

Therefore, after obtaining and reviewing medical records from your treating providers, we enlisted Exam Coordinators Network (ECN) to arrange a review of your file, as well as a phone conference with Dr. Reed, to ensure we had the most comprehensive understanding of your overall condition and of medical records received. Mahdy Flores, DO (Board Certified in Occupational Medicine) reviewed the entire record. He also attempted a phone conference with Dr. Reed on November 30, December 3 and 4, 2018. However, after leaving three messages, a call back was not received. Once all of this information was compiled, a report was drafted, and copy of the report is enclosed for you to review. Dr. Flores states that, based his review, the clinical evidence available supports the following permanent physical restrictions:

- Sit 8 hours per day
- Stand 1.5 hours per day, up to 45 minutes at a time
- Walk 1 hour per day, up to 30 minutes at a time
- Lift and/or carry up to 10 lbs. occasionally
- Push and/or pull up to 10 lbs. occasionally
- No climbing stairs, stooping, or crawling
- Kneel frequently
- Crouch occasionally
- Sit constantly
- Never reach below desk-level or above shoulder-level
- No use of lower extremities for foot controls
- Fine manipulation frequently
- Simple and firm grasping constantly
- No driving

Since your medical documentation also indicated that you also have mental health diagnoses, we wanted to ensure that any restrictions resulting from mental health conditions were also taken in to account when making this claim decision. As such, your file was then referred to R3 Continuum for a mental health file review. Brandon Erdos, MD (Board Certified Psychiatrist) reviewed your records and attempted to speak with your provider, Kelly Dardeen PhD - she responded to his inquiry via a detailed email. Susan Orenstein, PhD also conducted a phone interview with you to best understand your condition. After completing these reviews, Dr. Erdos provided a report of his finds, a copy of which is included in this mailing. Dr. Erdos opines that based on the overall review of available information, you are not globally impaired or limited by your diagnoses of anxiety or depression, so no additional restrictions exist.

*(...continued from previous page...)*

Therefore, we must assess your ability to perform any gainful occupation based upon the physical restrictions ascribed in the occupational medicine file review. We enlisted Paradigm Corporation to complete a transferable skills analysis to measure your education, prior work experience and skills against the physical restrictions noted above. They were able to identify a number of other occupations you can perform that are gainful and stay within the restrictions noted.

As such, it is our position that, based on the information contained in your file, you are capable of performing the material duties of your any occupation. Therefore, you no longer meet the policy's definition of Total Disability as of January 25, 2019. Benefits have already been paid to this date. Further benefits are denied. Your claim is now closed.

**Please review your policy for other options which may allow you to continue your eligibility for Group Term Life insurance. If there are no other policy provisions that allow coverage to continue while disabled, then you may convert your coverage to an individual life insurance policy, however, you must do so within 31 days. If you have questions about conversion or you are interested in continuing your life insurance coverage, please contact HRMP, LLC at 1(888)999-4767 or visit www.lifeconvmnl.com to obtain an online quote.**

Coverage eligible for conversion: $40,000
Effective Date: 6/11/2014

If you do not agree with this decision you may appeal this claim determination. Your appeal must be made **in writing** within 60 days of the date you receive this letter and can be made by you or your authorized representative. In order to give your appeal proper consideration, please include your name, Social Security Number, the plan/policy number, and the specific reasons for your appeal and/or disagreement with our decision.

You may include any new or additional medical evidence or other documentation to support your appeal. (Evidence or documentation should include copies of specific type of therapy treatment notes, records of hospitalizations not already received, office treatment notes, operative reports, diagnostic test results or findings.)

In addition, you may submit written comments, documents, records and other information relating to your claim. As part of your appeal, you may also, upon request and free of charge, access and receive copies of all documents, records and other information that are relevant to the claim for benefits.

The submission of the following information may have a bearing in the outcome of your appeal:

1) A written statement indicating your intent to appeal as well as your reason(s) for disagreeing with our claim determination;

*(...continued from previous page...)*

2) A narrative from your doctor(s) rebutting the findings of the enclosed report(s) elaborating on the nature of ongoing restrictions and limitations which preclude you from work. This should include the documentation of your restrictions and limitations, as well as the specific duties of you are unable to perform;
3) Copies of any additional office and treatment notes from your medical providers that are not already on file, to support through objective medical evidence your inability to perform any occupation beyond the date of this letter; and
4) Any other documentation that you believe would be pertinent in the reconsideration of your claim for waiver of premium benefits.

Please be advised that these suggestions are made only as a guideline and should not be considered all-inclusive. Submission of the above-noted items does not guarantee a reversal of the initial claim determination.

You will be advised of our decision in writing within 45 days after receipt of your written appeal unless matters beyond the control of the Plan require an extension. Our letter will include the rationale for our claim decision, with specific references to pertinent provisions of the Plan on which our decision was based. If an extension is needed, you will be provided a notice within 45 days after receipt of your written appeal. This notice will state the reason for the extension, any additional information needed, and the date by which a determination is expected.

If you have any questions regarding this notification, you may contact our office at 1(800)356-9601, extension 2416.

Sincerely,

Lisa L. Haselow
Senior Claims Specialist

Madison National
Life Insurance Company
A Member of The IHC Group

www.madisonlife.com

January 25, 2019

Paul Grossman
2418 Farmington Place
Lafayette, IN 47905

COPY

RE: Long Term Disability (LTD)
Claim # 37673
Policy # 1274
Employer: Tippecanoe County Government

Dear Mr. Grossman:

We are writing to inform you that additional disability benefits under the above-mentioned policy are being denied because the most recent medical information received does not support that you meet the definition of total disability. Your policy, in part, reads:

***"VIII. DEFINITION OF DISABILITY***

*A. Disability and Disabled means that during the Elimination Period and your Own Occupation Period [24 months], you are, as a result of Physical Disease, Injury, Mental Disorder, Substance Abuse or Pregnancy, unable to perform one or more of the Material Duties of your Own Occupation, and, due to such inability, your Work Earnings are less than 80% of your Indexed Predisability Earnings, and you are incapable of earning 80% or more of your Indexed Predisability Earnings.*
*Your Work Earnings may be Deductible Income...*

*B. After your Own Occupation Period ends [beyond 24 months], Disability and Disabled mean you are, as a result of Physical Disease, Injury, Mental Disorder, Substance Abuse or Pregnancy, unable to perform one or more of the Material Duties of ANY Occupation, and, due to such inability, your Work Earnings are less than 80% of your Indexed Predisability Earnings, and you are incapable of earning 80% or more of your Indexed Predisability Earnings."*

A copy of the entire Definition of Disability is enclosed for review.

The information used in making the claim decision includes, but is not limited to:

1. Employee's Statement completed by you on December 27, 2016;
2. Employer's Statement completed by Shirley Mennen on January 20, 2017;
3. Attending Physician's Statements completed by Jeffrey Crecelius, MD, and Darren Reed, DO ranging from December 22, 2016 to July 31, 2018;
4. Medical records from your treating providers ranging from April 2016 through October 2018;

*(...continued from previous page...)*

5. Activities of Daily Living & Computer Skills questionnaires completed by you on May 2, 2017 and July 23, 2018;
6. An Independent Occupational Medicine File Review conducted by Mahdy Flores, DO on behalf of Exam Coordinators Network (ECN);
7. An Independent Psychiatric File Review conducted by Brandon Erdos, MD on behalf of R3 Continuum; and
8. A Transferable Skills Analysis completed by David Morgan, MD, CRC, LCPC on behalf of Paradigm.

Based on the information in your file, you began working reduced hours which qualified you for Residual Disability as of September 13, 2016. Your claim for Long Term Disability benefits was approved based on the medical documentation received at that time and after 90 absence days, your LTD benefit began on January 25, 2017.

Throughout your claim, we have been obtaining updated medical records to ensure that we have up-to-date information regarding your condition and treatment. The latest update indicates that you continued to have complaints including chronic pain, insomnia, IBS/gastrointestinal issues, peripheral neuropathy, and anxiety. After reviewing medical records from all your providers, we were unable to clearly discern what restrictions resulted from your multiple conditions.

Therefore, after obtaining and reviewing medical records from your treating providers, we enlisted Exam Coordinators Network (ECN) to arrange a review of your file, as well as a phone conference with Dr. Reed, to ensure we had the most comprehensive understanding of your overall condition and of medical records received. Mahdy Flores, DO (Board Certified in Occupational Medicine) reviewed the entire record. He also attempted a phone conference with Dr. Reed on November 30, December 3 and 4, 2018. However, after leaving three messages, a call back was not received. Once all of this information was compiled, a report was drafted, and copy of the report is enclosed for you to review. Dr. Flores states that, based his review, the clinical evidence available supports the following permanent physical restrictions:

- Sit 8 hours per day
- Stand 1.5 hours per day, up to 45 minutes at a time
- Walk 1 hour per day, up to 30 minutes at a time
- Lift and/or carry up to 10 lbs. occasionally
- Push and/or pull up to 10 lbs. occasionally
- No climbing stairs, stooping, or crawling
- Kneel frequently
- Crouch occasionally
- Sit constantly
- Never reach below desk-level or above shoulder-level
- No use of lower extremities for foot controls
- Fine manipulation frequently
- Simple and firm grasping constantly
- No driving

*(...continued from previous page...)*

Since your medical documentation also indicated that you also have mental health diagnoses, we wanted to ensure that any restrictions resulting from mental health conditions were also taken in to account when making this claim decision. As such, your file was then referred to R3 Continuum for a mental health file review. Brandon Erdos, MD (Board Certified Psychiatrist) reviewed your records and attempted to speak with your provider, Kelly Dardeen PhD - she responded to his inquiry via a detailed email. Susan Orenstein, PhD also conducted a phone interview with you to best understand your condition. After completing these reviews, Dr. Erdos provided a report of his finds, a copy of which is included in this mailing. Dr. Erdos opines that based on the overall review of available information, you are not globally impaired or limited by your diagnoses of anxiety or depression, so no additional restrictions exist.

Therefore, we must assess your ability to perform any gainful occupation based upon the physical restrictions ascribed in the occupational medicine file review. We enlisted Paradigm Corporation to complete a transferable skills analysis to measure your education, prior work experience and skills against the physical restrictions noted above. They were able to identify a number of other occupations you can perform that are gainful and stay within the restrictions noted.

As such, it is our position that, based on the information contained in your file, you are capable of performing the material duties of your any occupation. Therefore, you no longer meet the policy's definition of Total Disability as of January 25, 2019. Benefits have already been paid to this date. Further benefits are denied. Your claim is now closed.

If you do not agree with this decision you may appeal this claim determination. Your appeal must be made **in writing** within 120 days of the date you receive this letter and can be made by you or your authorized representative. In order to give your appeal proper consideration, please include your name, Social Security Number, the plan/policy number, and the specific reasons for your appeal and/or disagreement with our decision.

You may include any new or additional medical evidence or other documentation to support your appeal. (Evidence or documentation should include copies of specific type of therapy treatment notes, records of hospitalizations not already received, office treatment notes, operative reports, diagnostic test results or findings.)

In addition, you may submit written comments, documents, records and other information relating to your claim. As part of your appeal, you may also, upon request and free of charge, access and receive copies of all documents, records and other information that are relevant to the claim for benefits.

The submission of the following information may have a bearing in the outcome of your appeal:

1) A written statement indicating your intent to appeal as well as your reason(s) for disagreeing with our claim determination;

*(...continued from previous page...)*

2) A narrative from your doctor(s) rebutting the findings of the enclosed report(s) and elaborating on the nature of ongoing restrictions and limitations which preclude you from work. This should include the documentation of the symptoms and conditions that are causing your restrictions and limitations, as well as the specific duties of you are unable to perform;
3) Copies of any additional office and treatment notes from your medical providers that are not already on file, to support through objective medical evidence your inability to perform any occupation beyond the date of this letter; and
4) Any other documentation that you believe would be pertinent in the reconsideration of your claim for long term disability benefits.

Please be advised that these suggestions are made only as a guideline and should not be considered all-inclusive. Submission of the above-noted items does not guarantee a reversal of the initial claim determination.

You will be advised of our decision in writing within 45 days after receipt of your written appeal unless matters beyond the control of the Plan require an extension. Our letter will include the rationale for our claim decision, with specific references to pertinent provisions of the Plan on which our decision was based. If an extension is needed, you will be provided a notice within 45 days after receipt of your written appeal. This notice will state the reason for the extension, any additional information needed, and the date by which a determination is expected.

If you have any questions regarding this notification, you may contact our office at 1(800)356-9601, extension 2416.

Sincerely,

Lisa L. Haselow
Senior Claims Specialist